UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUCCESS ON SUSSEX, LLC, and
JEROME SHELL,

     Plaintiffs,

v.

CITY OF DETROIT, et al.,

     Defendants.

Case No. 23-cv-11161

Honorable Robert J. White

---

**OPINION AND ORDER GRANTING THE CITY DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

---

I.    <u>Introduction</u>

Success on Sussex, LLC ("Sussex") and one of its members, Jerome Shell, commenced this 42 U.S.C. § 1983 against the City of Detroit, the City's Buildings, Safety, Engineering and Environmental Department ("BSEED"), and one of BSEED's inspectors, Thomas Gilchrist (the "City Defendants," collectively). The complaint alleges, among other things, that the City Defendants violated the Due Process Clause in the Fourteenth Amendment to the United States Constitution when the City of Detroit, without prior notice, partially demolished a commercial structure that Sussex allegedly owned.

Before the Court is the City Defendants' motion for summary judgment. (ECF No. 36).  Sussex responded in opposition. (ECF No. 39).  The City Defendants filed a reply. (ECF No. 43).  The Court will decide the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).  For the following reasons, the City Defendants' summary judgment motion is granted.

II.   Background

   A.   *Factual History*

Sussex currently owns the property and structures located at 9240 East Forest in Detroit, Michigan. (ECF No. 37-15, PageID.400).  The structures comprise three adjoining units. (ECF No. 37-1, PageID.353; *see also* ECF No. 36, PageID.317, ¶ 6; ECF No. 39, PageID.450, ¶ 6).  A fire destroyed the center unit's roof sometime around 2014. (ECF No. 37-2, PageID.355; *see also* ECF No. 36, PageID.317, ¶ 7; ECF No. 39, PageID.451, ¶ 7).  The record owners at the time, Douglas and Rea York, never repaired the damage. (ECF No. 36, PageID.317, ¶ 8; ECF No. 39, PageID.451, ¶ 8).  In July 2014, BSEED determined that the structures were "dangerous" pursuant to Detroit City Code § 8-17-2. (ECF No. 37-3, PageID.357-58; *see also* ECF No. 36, PageID.318, ¶ 9; ECF No. 39, PageID.451, ¶ 9).  The agency requested that the City Council affirm its decision and direct BSEED to demolish the structures. (ECF No. 37-3, PageID.357-58).

After conducting a public show cause hearing, the City Council affirmed BSEED's decision that the structures were "dangerous." (ECF No. 37-4, PageID.362; *see also* ECF No. 36, PageID.318-19, ¶ 10; ECF No. 39, PageID.451, ¶ 10).  The City Council's September 2, 2014 demolition order directed BSEED to "take the necessary steps for the removal" of the structures. (*Id.*).  Sussex and the record owners never appeared before BSEED or the City Council to challenge their assessment of the structures' dangerousness.  Nor did they appeal the City Council's September 2, 2014 demolition order to the Wayne County Circuit Court. *See* Detroit City Code § 8-17-25(e).

From 2014 through June 2018, BSEED left the structures intact because the City could not fund their demolition. (ECF No. 36, PageID.319, ¶ 13; *see also* ECF No. 37-23, PageID.420).  In June 2018, the property's record owners – the Yorks – requested that the City Council defer enforcing the September 2, 2014 demolition order. (ECF No. 37-8, PageID.378; *see also* ECF No. 36, PageID.320, ¶ 16; ECF No. 39, PageID.451, ¶ 16).  No one claims that the City Council ever granted a deferral. (ECF No. 39, PageID.458, ¶ 60; ECF No. 43, PageID.497, ¶ 60).  The following year, in June 2019, both Douglas York and Jerome Shell requested another deferral. (ECF No. 37-9, PageID.385-87).  Again, no one asserts that the City Council ever granted it. (ECF No. 39, PageID.458, ¶ 61; ECF No. 43, PageID.497, ¶ 61).

Even with the September 2, 2014 demolition order in place, it appears that BSEED made some efforts to salvage the structures.  For example, BSEED's director, David Bell, recommended to the City Council in July 2018 that it defer demolition for up to six months so long as the Yorks fulfilled certain conditions. (ECF No. 37-8, PageID.378).  And BSEED Inspector Thomas Gilchrist visited the property in August and October 2021 to compel the record owners to either rehabilitate the structures or erect perimeter fencing to block the public from accessing the property.[1] (ECF No. 37-10, PageID.389; ECF No. 37-13, PageID.396) None of these efforts proved successful.

On January 12, 2022, BSEED issued a "Notice of Emergency Order" to the Yorks and affixed the same notice to the property. (ECF No. 37-14, PageID.398). The notice stated in relevant part:

> THE CITY OF DETROIT BUILDING OFFICIAL HAS DETERMINED THAT THE BUILDING(S) AND/OR STRUCTURES(S) LOCATED AT: 9240 E. FOREST BLDG ID: 101 HAS BEEN INSPECTED, IS/ARE STRUCTURALLY UNSOUND, UNSAFE, DANGEROUS, IS AN IMMINENT DANGER, POSING AN ACTUAL AND IMMEDIATE THREAT TO THE HEALTH, SAFETY AND WELFARE OF THE PUBLIC.  THE TEMPORARY SAFEGUARD OF THIS STRUCTURE AND THE NECESSARY WORK TO BE DONE

---

[1] Gilchrist issued emergency correction orders in August and October 2021. (ECF No. 37-10, PageID.389; ECF No. 37-13, PageID.396).  Both orders listed Ayodele Owe as the property's owner. (*Id.*).  Owe conveyed her ownership interest in the property to Sussex through a September 2013 quitclaim deed. (ECF No. 37-15, PageID.400).  Sussex did not record the deed until April 4, 2022. (*Id.*).

4

TO PROTECT THE PUBLIC HEALTH AND SAFETY SHALL BEGIN IMMEDIATELY.

(*Id.*).

The City solicited proposals to partially demolish the structures in the interest of public safety. (ECF No. 37-16, PageID.402).  It selected the Adamo Group to perform the work. (ECF No. 37-17, PageID.405).  In May 2022, Adamo partially demolished the structures and inadvertently destroyed structural walls outside the scope of the intended project. (ECF No. 36, PageID.327, ¶ 34; ECF No. 39, PageID.454, ¶ 33).

On March 2, 2023, BSEED forwarded Sussex the following notice through certified mail and affixed it to the property:[2]

> **Re:   Notice of demolition of building located at 9240 E FOREST**
>
> To Owner of Record:
>
> **Notice of demolition.** The City of Detroit, through the Detroit City Council and/or the Buildings, Safety Engineering and Environmental Department ("BSEED"), has previously identified the above referenced building as a dangerous building and ordered its demolition.  The City of Detroit now has the necessary funds, and intends to proceed with the demolition. . . .
>
> **Right to hire your own demolition contractor.** You may hire your own contractor to demolish the building.  To do so, you must **(1)** immediately hire a properly licensed contractor; **(2)** within five (5) business days of the date on this letter, have your

---

[2] BSEED forwarded the notice to Ayodele Owe as well. (ECF No. 37-23, PageID.420).

contractor deliver a copy of this letter to BSEED and obtain the necessary permit; and **(3)** complete the demolition within sixty (60) days of obtaining the City permit.

**To contest the demolition**, you must, **within ten (10) days of the date on this letter**, file a request for demolition deferral with BSEED. . . .

**IF YOU FAIL TO EITHER HIRE YOUR OWN DEMOLITION CONTRACTOR OR CONTEST THE DEMOLITION, FOLLOWING THE PROCEDURES SET FORTH ABOVE, THE BUILDING WILL BE DEMOLISHED AND THE COSTS OF THE DEMOLITION ASSESSED AS A LIEN AGAINST THE PROPERTY.**

(ECF No. 37-23, PageID.420) (bold in original).

Sussex acknowledges that it never (1) requested a deferral of the September 2, 2014 demolition order within 10 days of the above notice, or (2) retained a licensed contractor to apply for a building permit and perform the demolition at Sussex's own expense. (ECF No. 36, PageID.329, ¶ 39; ECF No. 39, PageID.456, ¶ 39).

B.    *Procedural History*

On April 24, 2023, Sussex filed this lawsuit in Wayne County Circuit Court to, among other things, enjoin the City Defendants from demolishing the structures remaining on the property. (ECF No. 1, PageID.22).  The complaint alleges that the City Defendants and Adamo violated the Fourteenth Amendment's Due Process Clause (Count I), 42 U.S.C. § 1983 (Count II), and Mich Comp. Laws §§ 125.540-

6

541 (Count III).  Sussex further pled a state law negligence claim against Adamo only (Count IV).

The City Defendants timely removed the case to the United States District Court for the Eastern District of Michigan pursuant to 28 U.S.C. § 1441(a).[3]  They seek declaratory relief and assert counterclaims against Sussex for unjust enrichment, restitution, and abatement of nuisances. (ECF No. 8, PageID.120-24, ¶¶ 53-69).

The district judge previously assigned to this case granted Adamo's motion to dismiss the claims asserted against it, with prejudice, pursuant to Fed. R. Civ. P. 41(b). (ECF Nos. 14, 18).  And Sussex concedes that Count I must be dismissed because section 1983 provides the exclusive avenue for vindicating its federal constitutional rights. (ECF No. 39, PageID.463, n.2) (citing *Foster v. Michigan*, 573 F. App'x 377, 391 (6th Cir. 2014)).  The City Defendants now move for summary judgment on the remaining causes of action – Counts II and III.

III.    Legal Standards

A moving party is entitled to summary judgment where the "materials in the record" do not establish the presence of a genuine dispute as to any material fact.

---

[3] The notice of removal cites 28 U.S.C. § 1443 as an additional basis for removing the case to federal court. (ECF No. 1, PageID.3, ¶ 5).  Section 1443 is not suited for removal in this context. *See Conrad v. Robinson*, 871 F.2d 612, 614-16 (6th Cir. 1989); *see also Detroit Police Lieutenants and Sergeants Association v. City of Detroit*, 597 F.2d 566, 568 (6th Cir. 1979) (per curiam).

Fed. R. Civ. P. 56(c). All the evidence, along with all reasonable inferences, must be viewed in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

IV.     Analysis

    A.     *The Appropriate Parties to the Lawsuit*

Before launching into the merits, the Court must identify the correct parties to this litigation. Under Michigan law, municipal departments are agencies of the municipality – they are not separate legal entities that are capable of being sued. *Boykin v. Van Buren Township*, 479 F.3d 444, 450 (6th Cir. 2007); *see also Glynn v. Marquette City Police Dep't*, No. 24-1486, 2025 U.S. App. LEXIS 7060, at *4 (6th Cir. Mar. 24, 2025). This principle applies to municipal police departments as well as "other city departments, including departments of public works." *Carey v. Hall*, No. 12-14777, 2013 U.S. Dist. LEXIS 8096, at *3 (E.D. Mich. Jan. 3, 2013); *see also Exclusive Brands LLC v. City of Garden City*, No. 19-11062, 2020 U.S. Dist. LEXIS 162918, at *15-16 (E.D. Mich. Sep. 8, 2020) (dismissing the Garden City Building Department since it "is not a legal entity capable of being sued."); *Michonski v. City of Detroit*, 162 Mich. App. 485, 490 (1987) (concluding that the City of Detroit Public Lighting Department is "not a separate legal entity against which a tort action can be directed"). Since BSEED falls within this same rule, it is not a properly named defendant to this litigation.

Then consider Inspector Gilchrist's role in the asserted constitutional violations.  Section 1983 civil rights plaintiffs must establish that a person acting under the color of state law deprived them of a guaranteed right under the United States Constitution or federal law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155-56 (1978).  At the summary judgment stage, the plaintiff is required to adduce sufficient evidence that raises a genuine factual question about the defendant's personal involvement in the violation of his constitutional rights. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *see also Jacob v. Twp. of West Bloomfield*, 192 F. App'x 330, 336 (6th Cir. 2006) ("To succeed in under § 1983, a plaintiff must show personal involvement by the defendant in the constitutional violation.").

Sussex alleges that the City Defendants (including Gilchrist) ran afoul of the Fourteenth Amendment's procedural due process guarantee when they failed to afford Sussex with notice and a hearing to contest the City's 2014 "dangerous" structure determination. (ECF No. 39, PageID.464-66; *see also* ECF No. 1, PageID.17, ¶ 44).  And Sussex contends that the City Defendants (again, including Gilchrist) violated the company's substantive due process rights when they partially demolished structures located on the property in May 2022.

But Sussex fails to demonstrate that Gilchrist played any role in the procedures that culminated in the City Council's September 2, 2014 demolition order.  In fact, Sussex acknowledges that Gilchrist only first became involved with

the property after he inspected it in August 2021 and later issued an August 27, 2021 emergency correction order. (ECF No. 37-10).  Nor is there any evidence indicating that Gilchrist personally contributed to or participated in the decision to partially demolish the structures in May 2022.  He was last involved with the property in October 2021, when he issued a second emergency correction order directing the erection of "safety barrier fencing" to block public access to the property. (ECF No. 37-13, PageID.396; *see also* ECF No. 1, PageID.9, ¶ 14).

Because Gilchrist was not personally involved in the deprivation of Sussex's constitutional rights, the portion of section 1983 claim asserted against him in his individual capacity must be dismissed.[4]  That leaves the City of Detroit as the sole defendant who may be subject to section 1983 liability.[5]

    *B.*    *Municipal Liability*

---

[4] Sussex is suing Gilchrist in his individual capacity only. (ECF No. 1, PageID.6, *see also* PageID.7, ¶ 5).  Insofar as the company purports to sue Gilchrist in his official capacity too, that portion of the section 1983 claim must likewise be dismissed. (ECF No. 39, PageID.467).  That's because an official capacity claim asserted against Gilchrist is duplicative of the allegations against the City of Detroit. *See Pineda v. Hamilton Cty.*, 977 F.3d 483, 494 (6th Cir. 2020) (stating that a suit against individual defendants in their official capacities is "analogous to a suit against the local entity."); *see also Kentucky v. Graham*, 473 U.S. 159, 166-67, 167 n.14 (1985).

[5] Whether Shell fulfilled the statutory criteria necessary to commence this lawsuit on behalf of Sussex, as one of its members, is uncertain. *See* Fed. R. Civ. P. 17(b)(3); Mich. Comp. Laws § 450.4510.  Since the City Defendants do not challenge his capacity to sue them, the Court will reserve judgment on that question.

The City of Detroit is a Michigan municipality. *See, e.g.,* Mich. Comp. Laws § 691.1401(d).  "A municipality is a 'person' under 42 U.S.C. § 1983, and so can be held liable for constitutional injuries for which it is responsible." *Morgan v. Fairfield Cnty.*, 903 F.3d 553, 565 (6th Cir. 2018).  To prevail on a section 1983 claim against a municipality, the plaintiff must show that a municipal policy or custom violates a federal right. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 694 (1978).  Sussex may establish municipal liability through (1) the existence of an illegal official policy or legislative enactment, (2) an official with final decision-making authority who ratifies illegal actions, (3) the existence of a policy of inadequate training or supervision, or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *See Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).

Although it is unclear what theory of municipal liability Sussex is pursuing against the City, the closest analogue is the second option because Sussex challenges the procedures that led to the City Council's September 2, 2014 demolition order. (ECF No. 39, PageID.465-66; *see also* ECF No. 1, PageID.17, ¶ 44).

"Municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances – for example, a single decision by a city council." *Guptill v. City of Chattanooga*, 160 F.4th 768, 782 (6th Cir. 2025) (cleaned up); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

11

"[T]he policymaker must have final authority to establish municipal policy with respect to the action ordered, which is a question of state law." *Id.* (quotation omitted); *see also Pembaur*, 475 U.S. at 482-83.   The City Council is the policymaker vested with the final authority to decide when "dangerous" structures should be demolished in the City of Detroit. *See* Detroit City Code § 8-17-25(e).

The section 1983 claim (Count II) divides into two sub-parts: a Fourteenth Amendment procedural due process claim and a Fourteenth Amendment substantive due process claim.   The Court will address each of them in turn.

### 1.   Procedural Due Process

The Fourteenth Amendment to the United States Constitution prohibits states and localities from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1.   To establish a section 1983 procedural due process claim, plaintiffs must demonstrate "(1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment . . . , (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Cooperrider v. Woods*, 127 F.4th 1019, 1042 (6th Cir. 2025) (quotation omitted).   Sussex specifically maintains that it did not receive adequate notice and a hearing to contest the City's "dangerous" structure proceedings in 2014.

The City's Code of Ordinances outlines the notification procedures employed when determining whether a structure is "dangerous." Detroit City Code § 8-17-23(a) establishes *who* is entitled to written notice "that [a] building or structure is a dangerous building" – it is "any owner and party-in-interest in the building or structure in whose name the property appears on the last City of Detroit and County of Wayne tax assessment records, and on the records of the County of Wayne Registrar of Deeds." *Id.*

Detroit City Code § 8-17-23(b) delineates the notice's *content* – it must "specify the time and place of a hearing on whether the building or structure is a dangerous building" and "[t]he person to whom the notice is directed" is afforded "the opportunity to show cause at the hearing why the hearing officer should not order the building or structure to be demolished, made safe, or properly maintained."

Detroit City Code § 8-17-23(c) governs how the written notice must be *served* – "either personally or by certified mail, return receipt requested, addressed to the owner or party in interest at the address shown on the last City of Detroit and County of Wayne tax assessment records, and on the records of the County of Wayne Registrar of Deeds." If service is accomplished through certified mail, "a copy of the notice shall also be posted upon a conspicuous part of the building or structure." *Id.* And the notice must be "served upon the owner or party in interest at least ten days before the date of the hearing included in the notice." *Id.*

In the event "the owner, or agent of the owner, fails to appear" at the show cause hearing, the hearing officer must "file a copy of his or her findings and order with the City Council not more than five days after the date for compliance set in the order and request that necessary action be taken to enforce the order." Detroit City Code § 8-17-24(d).  The hearing officer's "findings and order" must also be "served on the owner, or agent of the owner" in the same manner as the notice of the show cause hearing. *Id.*; *see also* Detroit City Code § 8-17-23(c).

Detroit's City Council must then conduct its own show cause hearing, "not less than 30 days after" the initial show cause hearing, to address "the findings and order of the hearing officer." Detroit City Code § 8-17-25(a).  "The City Council, through the City Clerk" must provide notice to "the owner, or the agent of the owner" of "the time and place of the hearing" in the same manner as the notice of the initial show cause hearing. *Id.*; *see also* Detroit City Code § 8-17-23(c).

At the City Council's show cause hearing, "all owners, or agents of the owners, shall be given the opportunity to appear and explain why the order should not be enforced." Detroit City Code § 8-17-25(a).  When the show cause hearing concludes, the City Council must either "approve, disapprove, or modify the order for demolition, or for making the building or structure safe, or for properly maintaining the building or structure including the surrounding grounds." *Id.* Property owners who are "aggrieved by a final decision of the City Council

14

concerning the order of the hearing officer, . . . may file a petition for an order of superintending control with the circuit court within 20 days from the date of the decision." *Id.* at § 8-17-25(e); *see* also Mich. Comp. Laws § 125.542.

Sussex's procedural due process claim fails because it was not entitled to written notice of the 2014 "dangerous" structure proceedings. (ECF No. 37-3, PageID.357-58).   Sussex does not contend that, in the summer of 2014, it "appear[ed]" as an "owner" or "party-in-interest" in the property "on the last City of Detroit and County of Wayne tax assessment records, and on the records of the County of Wayne Registrar of Deeds." Detroit City Code § 8-17-23(a).  Nor does Sussex dispute that the quitclaim deed on file with the Wayne County Registrar of Deeds in the summer of 2014 shows "Douglas R. York and Rea A. York, as joint tenants with rights of survivorship" as the only property owners. (ECF No. 37-5, PageID.364).

Sussex instead points to the September 2013 quitclaim deed, purportedly conveying ownership of the property from Ayodele Owe to Sussex, as the basis for its entitlement to notice of the 2014 proceedings.[6] (ECF No. 39, PageID.451, 453, 457, 464, ¶¶ 11, 27, 58; ECF No. 37-15, PageID.400).  But Sussex never recorded this conveyance in the Wayne County Register of Deeds until April 4, 2022 –

---

[6] The circumstances surrounding how and when Owe received a conveyable interest in the property are unclear.

approximately seven and a half years after the initial show cause hearing and the City Council's September 2, 2014 demolition order. (ECF No. 37-15, PageID.400). So the City was unaware of Sussex's claimed interest in the property and, therefore, had no obligation to notify the company of (1) the initial show cause hearing, (2) the City Council's show cause hearing, or (3) the City Council's September 2, 2014 demolition order. *See* Detroit City Code §§ 8-17-23(a)-(c), 8-17-24(d), 8-17-25(a).

Because Sussex did not qualify to receive notice and a hearing pursuant to the Detroit City Code, the procedural due process claim against the City cannot withstand summary judgment.[7] [8]

2.      Timeliness

Even assuming the procedural due process claim could move forward on the merits, it is nevertheless time-barred.  Section 1983 claims arising in Michigan have

---

[7] Insofar as the procedural due process claim is premised upon the City's failure, in November 2022, to afford Sussex "the opportunity of a hearing to present" information to the City Council as to why the structures should not be demolished completely, this theory lacks merit. (ECF No. 39, PageID.466).  Sussex is not entitled to any further notice, or a hearing, because there is no evidence that the property's record owners in 2014 – the Yorks – ever requested a "demolition deferral, within 20 days of the receipt of notice" of the City Council's September 2, 2014 demolition order. Detroit City Code § 8-17-26(a).  As a result, the City may demolish the remaining "dangerous" structures "without further notice to *any* owner or party-in-interest." *Id.* at § 8-17-26(g) (emphasis added).

[8] Sussex does not raise a facial or as-applied constitutional challenge to the Detroit City Code's notice provisions. *See* Detroit City Code §§ 8-17-23(a)-(c), 8-17-24(d), 8-17-25(a).

a three-year limitations period. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 867 n.8 (6th Cir. 2020); *see also* Mich. Comp. Laws § 600.5805(2). The statute of limitations "begins to run when the plaintiff knows or has reason to know that the act providing the basis of his or her injury has occurred." *Garza*, 972 F.3d at 867 n.8 (quotation omitted).

The record shows that Shell had actual notice of the City Council's September 2, 2014 demolition order as early as June 2019, when he applied to defer the order and executed a commercial owner commitment with BSEED. (ECF No. 37-9, PageID.385, 387). Shell must have known by then whether Sussex had received any prior notice from the City about (1) its efforts to deem the structures as "dangerous," and (2) the City Council's September 2, 2014 demolition order. Since Sussex did not commence this lawsuit until April 24, 2023 – nearly four years after Shell filed the June 2019 deferral application – the procedural due process claim is now untimely. (ECF No. 1, PageID.6-23).

### 3. Substantive Due Process

Sussex's substantive due process claim fares no better. "Substantive due process protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that 'shock the conscience.'" *Snyder v. Vill. of Luckey*, No. 24-3530, 2025 U.S. App. LEXIS 30969,

at *25 (6th Cir. Nov. 24, 2025); *see also Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003).

But "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Johnson v. City of Cincinnati*, 310 F.3d 484, 490-91 (6th Cir. 2002) (quotation omitted); *see also Albright v. Oliver*, 510 U.S. 266, 273 (1994).

The Fifth Amendment's Takings Clause is the most explicit textual source in the federal constitution pertaining to "whether and under what circumstances the government may take an individual's private property." *Montgomery v. Carter County*, 226 F.3d 758, 769 (6th Cir. 2000). The amendment forbids local officials from taking "private property . . . for public use without just compensation." U.S. Const. amend. V; *see also Knick v. Twp. of Scott, Pa.*, 588 U.S. 180, 206 (2019) ("A property owner may bring a takings claims under § 1983 upon the taking of his property without just compensation by a local government."). So Sussex must resort to the Takings Clause – not the Fourteenth Amendment's Due Process Clause – as the basis for constitutional redress against the City of Detroit. *See Buckles v. Columbus Mun. Airport Auth.*, 90 F. App'x 927, 931 (6th Cir. 2004) ("Buckles's substantive due process claim fails because, where the Constitution specifically

18

provides a remedy, as for the taking of real estate, a substantive due process claim that merely restates the more specific claim will not lie."); *see also Montgomery*, 226 F.3d at 769 (applying the same principle).

Because Sussex does not allege that the City of Detroit violated the Fifth Amendment's Takings Clause, his substantive due process claim cannot proceed in its stead. *Shoffner v. Qwest Communs. Corp.*, No. 01-54, 2014 U.S. Dist. LEXIS 187505, at *15-16 (E.D. Tenn. Sep. 9, 2014) (dismissing a substantive due process claim in part because the cause of action should have been pled under the Takings Clause and the complaint failed to allege that claim).[9]

### D.      Remand of the State Law Claims and Counterclaims

The dismissal of the federal due process claims ultimately deprives the Court of original jurisdiction. *See* 28 U.S.C. § 1441(a).  Sussex does not state a plausible claim for relief under section 1983, so there is no federal question left to decide. 28

---

[9] Even if Sussex had brought a Fifth Amendment Takings claim it would have been unlikely to survive summary judgment.  The law in this circuit is clear: the "demolition of a building to enforce building codes or abate a public nuisance does not constitute a compensable taking." *Asset Mgmt. Grp., LLC v. City of Detroit*, No. 23-11496, 2025 U.S. Dist. LEXIS 60882, at *21 (E.D. Mich. Mar. 28, 2025); *see also Davet v. City of Cleveland*, 456 F.3d 549, 553 (6th Cir. 2000) (affirming the district court's conclusion that a "[d]emolition, compliant with local law and procedure, in order to enforce building codes or abate a public nuisance does not constitute a taking as contemplated by the federal and [state] Constitutions"); *Embassy Realty Invs., Inc v. City of Cleveland*, 572 F. App'x 339, 344 (6th Cir. 2014) ("Compensation is not mandated when the state legitimately exercises police power to abate a property nuisance.").

U.S.C. § 1331.  And the City Defendants did not (and could not have) removed this action based upon the parties' diverse citizenship because the City of Detroit is a Michigan citizen.  *See* 28 U.S.C. § 1441(b)(2) (stating that removal based on diversity jurisdiction is unavailable "if *any* of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.") (emphasis added); *see also Baker v. 3M*, 99 F. App'x 718, 721 (6th Cir. 2004) (stating that "[p]olitical subdivisions of a state . . . are citizens of the state for diversity purposes."); *Lenoir v. Porters Creek Watershed Dist.*, 586 F.2d 1081, 1089 n.9 (6th Cir. 1978) (same).

That leaves open the exercise of supplemental jurisdiction.  A district court "may decline to exercise supplemental jurisdiction over a claim" where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007).  Supplemental jurisdiction "should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).

Here, the likelihood of multiple litigations is minimal.  And the parties raise novel issues of statutory interpretation under state law.  Because Michigan state

courts are best equipped to address those questions, the Court declines to exercise

supplemental jurisdiction over the pendent state law claims and counterclaims and

will remand the case to state court. *See Gamel v. City of Cincinnati*, 625 F.3d 949,

952 (6th Cir. 2010) ("When all federal claims are dismissed before trial, the balance

of considerations usually will point to dismissing the state law claims, or remanding

them to state court if the action was removed.").  Accordingly,

IT IS ORDERED that the City Defendants' motion for summary judgment

(ECF No. 36) is granted.

IT IS FURTHER ORDERED that the case is remanded to Wayne County

Circuit Court.

IT IS FURTHER ORDERED that the Clerk of the Court is directed to close

the case.

Dated: February 27, 2026                   s/ Robert J. White
                                           Robert J. White
                                           United States District Judge

21